MICHAEL N. FEUER, City Attorney (SBN 111529)
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
**ARLENE N. HOANG, Deputy City Attorney (SBN 193395)**
**JOSEPH S. PERSOFF, Deputy City Attorney (SBN 307986)**
200 North Main Street, City Hall East, Suite 675
Los Angeles, California 90012
Telephone: 213-978-7508
Facsimile: 213-978-7011
Email:  Arlene.Hoang@lacity.org
Joseph.Persoff@lacity.org

Attorneys for Defendants
CITY OF LOS ANGELES
(also erroneously sued as the Office of Wage
Standards for the City of Los Angeles) and
ERIC GARCETTI, in his official capacity as
Mayor of Los Angeles

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARLOW RESPIRATORY HOSPITAL, at al.; | Case No. 2:22-CV-04828-JLS-GJS |
|        Plaintiffs, | **DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CITY OF LOS ANGELES; OFFICE OF WAGE STANDARDS FOR THE CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of Los Angeles; and DOES 1-20, | [Filed concurrently with Evidentiary Objections; Request for Judicial Notice; Declaration of Bernie Mariscal; and Declaration of Joseph S. Persoff] |
|        Defendants. | Date:  August 5, 2022 Time:  10:30 a.m. Courtroom:  8A |

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    RELEVANT FACTS AND AND PROCEDURAL HISTORY .............................. 3

      A. The Healthcare Workers Minimum Wage Ordinance Addresses   Healthcare
         Working Conditions And Shortages, and The Staggering  Increase To The
         Cost Of Living ................................................................................. 3

      B. Pursuant to City Law, the Ordinance Was Certified as an Initiative Petition for
         Presentation to the Los Angeles City Council .................................. 4

      C. Following Public Comment, City Council Adopts the Ordinance ................. 6

      D. Attorneys for Plaintiffs Filed a Referendary Petition to the Ordinance on the
         Same Day it was Passed by City Council, Which if  Certified Sufficient,
         Would Stay the Ordinance ................................................................ 8

      E. The Present Litigation ...................................................................... 9

III.   LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS ............................ 9

IV.    ARGUMENT ............................................................................................ 10

      A. Plaintiffs Are Not Likely To Succeed On The Merits ................................ 10
         1.   Wage Regulation Is Within The City's Police Powers .......................... 10

         2.   Plaintiffs' Equal Protection Claims Fail .......................................... 10

            a) Because Highly Deferential Rational Basis Review Applies, and City
               Council Found Rational Reasons For the Ordinance, Plaintiffs Fail to
               State an Equal Protection Violation Claim ..................................... 11

            b) Plaintiffs' Arguments Regarding "Improperly Singling Out" Private
               Facilities Lack Merit .................................................................... 13

         3.   Plaintiffs' procedural due process violation claim fails ...................... 17

      B. The Remaining *Winter* Factors Do Not Support Injunctive Relief ............... 20
         1.   Plaintiffs Fail To Demonstrate Irreparable Harm .................................. 20

         2.   The Balance Of Equities And Public Interest Favors Paying Healthcare
            Workers An Increased Wage .......................................................... 24

V.     CONCLUSION .......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Bev. Ass'n v. City & Cnty. of S.F.*,
  916 F.3d 749 (9th Cir. 2019) ............................................................21

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
  15 F.4th 954 (9th Cir. 2021) ............................................11, 14, 15

*Am. Trucking Ass'ns v. City of L.A.*,
  559 F.3d 1046 (9th Cir. 2009) ...........................................................9

*Arc of Cal. v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ............................................................21

*Autotronic Systems, Inc. v. Coeur d'Alene*,
  527 F.2d 106 (9th Cir. 1975) ............................................................11

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) ..........................................................21

*Cal. Grocers Ass'n v. City of Long Beach*,
  521 F.Supp.3d 902 (C.D. Cal. 2021) ................................................13

*Carey v. Piphus*,
  435 U.S. 247 (1978) ..........................................................................18

*Clark v. City of Seattle*,
  899 F.3d 802 (9th Cir. 2018) ............................................................19

*Clements v. Fashing*,
  457 U.S. 957 (1982) ..........................................................................14

*Conway v. State Bar*,
  47 Cal. 3d 1107 (1989) ......................................................................18

*Cooley v. Sup. Ct.*,
  29 Cal. 4th 228 (2002) .......................................................................11

*Dallas v. Stanglin*,
  490 U.S. 19 (1989) ............................................................................11

*Donohue v. AMN Services, LLC*,
  11 Cal. 5th 58, (2021) .......................................................................22

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ..........................................................25

*East Bay Sanctuary Covenant v. Trump*,
  950 F.3d 1242 (9th Cir. 2020) ..........................................................21

*Edmo v. Corizon, Inc.*,
  935 F.3d 757 (9th Cir. 2019) ............................................................21

*FCC v. Beach Comms.*,
  508 U.S. 307 (1993) ..........................................................................11

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Franceschi v. Yee*,
  887 F.3d 927 (9th Cir. 2018) ................................................................. 17
*Garcia v. Google*,
  786 F.3d 733 (9th Cir. 2015) ........................................................... 10, 20
*Halverson v. Skagit Cnty.*,
  42 F.3d 1257 (9th Cir. 1994) ........................................................... 17, 18
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................. 19
*Lyng* v. *Automobile Workers*,
  485 U.S. 360 (1988) ............................................................................. 12
*Manduley v. Super. Ct.*,
  27 Cal. 4th 537 (2002) ......................................................................... 10
*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ......................................................................... 17, 18
*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ............................................................................... 9
*Merrifield v. Lockyer*,
  547 F.3d 978 (9th Cir. 2008) ............................................................... 15
*Obama for Am. v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ............................................................... 21
*People* v. *Ramirez*,
  25 Cal. 3d 260 (1979) ......................................................................... 18
*Plyler v. Doe*,
  457 U.S. 202 (1982) ................................................................. 10, 11, 14
*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) ....................................................... passim
*S. Cal. Healthcare Sys. Inc. v. City of Culver City*,
  No. 2:21-cv-05052, 2021 U.S. Dist. LEXIS 141109, 2021 WL 3160524 (C.D. Cal. July
  23, 2021) ............................................................................................. 13
*S.F. Taxi Coalition. v. City & Cty. of S.F.*,
  979 F.3d 1220 (9th Cir. 2020) ............................................................. 16
*Vance v. Bradley*, 440 U.S. 93, 111-12 (1979) ....................................... 14
*Western Growers Ass'n v. City of Coachella*,
  548 F.Supp.3d 948 (C.D. Cal. 2021) .................................................... 13
*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................. 9

**Statutes**
Cal. Code Civ. Proc., § 1103 .................................................................. 20
Cal. Health & Safety Code, § 127285 ..................................................... 20

iii

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Cal. Health & Saf. Code, § 128700 ........................................................ 20
Cal. Health & Saf. Code, § 128735 ................................................... 20, 22
Cal. Health & Saf. Code, § 128740 ........................................................ 20
Cal. Lab. Code, § 226 ............................................................................ 22

**Other Authorities**
L.A. City Charter, § 250 ........................................................................... 8
L.A. City Charter, § 252 ..................................................................... 8, 18
L.A. City Charter, § 450 ........................................................................... 4
L.A. City Charter, § 451 ....................................................................... 4, 5
L.A. City Charter, § 452 ....................................................... 6, 8, 12, 18
L.A. City Charter, § 460 ........................................................................... 8
L.A. City Charter, § 461 ................................................................. 8, 9, 21
L.A. City Charter, § 462 ........................................................................... 8
L.A. Election Code, § 705 ........................................................................ 6
L.A. Election Code, § 706 ........................................................................ 6
L.A. Election Code, § 707 ........................................................................ 6
L.A. Election Code, § 708 ........................................................................ 6
L.A. Election Code, § 709 ........................................................................ 6
L.A. Election Code, § 710 ........................................................................ 6
L.A. Election Code, § 711 ........................................................................ 5
L.A. Election Code, § 712 ........................................................................ 8
L.A. Election Code, § 713 ........................................................................ 8
L.A. Election Code, § 714 ........................................................................ 8
L.A. Election Code, § 715 ........................................................................ 8
L.A. Election Code, § 716 ........................................................................ 8
L.A. Election Code, § 717 ........................................................................ 8
L.A.M.C., § 187.02 ................................................................................. 16
L.A.M.C., § 187.50 ............................................................... 3, 4, 12, 13
L.A.M.C., § 187.51 ................................................................................... 3
L.A.M.C., § 187.52 ................................................................................... 3
L.A.M.C., § 187.53 ................................................................................... 3
L.A.M.C., § 187.57 ................................................................................... 3

**Rules**
Fed. R. Civ. P. 65 ................................................................................... 10

**Constitutional Provisions**
Cal. Const. art. I, § 7 ............................................................................. 17
U.S. Const. amend. XIV, § 1 .................................................................. 17

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

For more than two years, the City of Los Angeles ("the City"), and the world, have been devastated by a terrible, deadly, ongoing pandemic brought on by the COVID-19 virus.  Despite the health risks to themselves and their families, courageous, essential, healthcare workers have been on the front lines, caring for patients, cleaning hospitals and medical facilities, preparing food for those admitted, keeping the community safe, and overall providing necessary care, treatment, and services to those who are sick and vulnerable.  These healthcare employees have provided their services even when they did not have adequate or available personal protective equipment, and often while earning low wages, few benefits, and struggled to meet their basic needs, including suffering from food and housing insecurity.  Conversely, private hospitals, medical facilities, and clinics continue to reap profits during the pandemic and compensate their executives handily.

Recognizing the risks and challenges facing these brave front-line employees, and the inequalities between them and their employers, almost six months ago, five concerned Angelenos initiated a petition under the Los Angeles City Charter ("Charter" or "L.A. Charter") to raise the minimum wage to $25 for certain, privately employed healthcare workers within the City.  Pursuant to the Charter and the Los Angeles Elections Code, the initiative petition was certified under law to qualify for consideration by the Los Angeles City Council ("City Council"), who timely heard and considered public comment on the "hero pay" initiative—from both supporters and opponents, including Plaintiffs or their members—and, after considering the arguments raised, adopted the initiative petition as an Ordinance without alteration, as authorized by law.  The Ordinance passed June 29, 2022, was approved by Mayor Garcetti on July 7, 2022, and published on July 13, 2022. By law, its effective date is August 13, 2022.

On the same day the Ordinance passed, one of the law firms representing Plaintiffs

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

(Bell, McAndrews & Hiltachk, LLP) filed a referendary petition, which if certified, stays the Ordinance until it is adopted by the voters or repealed by City Council. In other words, if the referendary petition is certified, Plaintiffs' motion and their request for injunctive relief would be moot on or around August 12, 2022.

Despite this procedural history, including the probability the Ordinance could be stayed before it even goes into effect, Plaintiffs unmeritoriously filed the present action and sought "emergency" relief on their motion for preliminary injunction. However, there is no basis to grant injunctive relief against the City for multiple reasons. First, Plaintiffs have not established a likelihood they will succeed on the merits of their claims, which is the most important factor the court is to consider. Given the highly deferential rational basis review that applies to City Council's action, the plausible reasons for the adoption of the Ordinance and its classification of workers, including the City's desire to compensate the brave healthcare workers in the private sector and City Council's legal ability to do so step-by-step even if the entire problem is not entirely eliminated, Plaintiffs' claims the City's actions violate the federal and California Constitutions' Equal Protection Clauses fail.

Similarly, Plaintiffs' procedural due process claims lack merit because Plaintiffs, their members, and other opponents to the Ordinance were provided notice and an opportunity to be heard and were heard. They also knew for months the subject Ordinance may be imminent. Merely because Plaintiffs disagree with City Council's decision does not rise to the level of a constitutional violation. Plaintiffs also have not established any irreparable harm, the balance of equities favor the City, and it is in the public interest for the City's essential, front-line healthcare workers to receive a livable wage. Plaintiffs' desire to put profits over people should not be condoned, and their motion for preliminary injunction should be denied.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.   The Healthcare Workers Minimum Wage Ordinance Addresses Healthcare Working Conditions And Shortages, and The Staggering Increase To The Cost Of Living

Ordinance Number 187566, the "Healthcare Workers Minimum Wage Ordinance" ("Ordinance"), which amends the Los Angeles Municipal Code ("L.A.M.C."), was proposed by initiative petition and enacted by the Los Angeles City Council on June 29, 2022 pursuant to the City's Charter and Elections Code.  It was approved by the Mayor on July 7, 2022, published on July 13, 2022, and is effective August 13, 2022.  Dkt. 1-1.

In summary, the Ordinance establishes a $25 per hour minimum wage for an employee working at certain covered private healthcare facilities in the City, including a clinician, nurse, aide, technician, maintenance worker, janitorial or housekeeping staff, groundskeeper, guard, food service worker, pharmacist, and administrative or clerical worker, but not including a manager or supervisor.  Dkt. 1-1 (L.A.M.C., §§ 187.51 (G) and 187.52 (B)(1)).  A covered healthcare facility includes a hospital, clinic, hospital skilled nursing facility, and other facilities specified in Sections 187.51 (B) and (C), and as defined by the relevant provisions in the California Health and Safety Code. Beginning January 1, 2024, the minimum wage rate would be adjusted annually for increases in the cost of living.  *Id.* at § 187.52 (B)(2).  An employer is prohibited from funding the minimum wage increase through layoffs or reductions in benefits or hours, or from taking any adverse action against a covered employee.  *Id.* at §§ 187.52 (C) and (D), and § 187.53.  The Ordinance further provides a one-year, court-granted waiver to an employer demonstrating sufficient financial hardship.  *Id.* at § 187.57.  Pursuant to Section 4, if the City Council approved the measure, it was to take effect on the earliest date allowed by law.

L.A.M.C. Section 187.50 makes multiple findings and expressly specifies the following purposes:

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

> In the City of Los Angeles, healthcare workers are integral to our wellbeing. Healthcare workers have risked their own health to ensure all residents have access to healthcare. While healthcare providers have seen drastic increases in profits, even during the COVID-19 pandemic, workers are still underpaid and struggle to afford housing and other basis needs. Our healthcare workers have been and continue to be the backbone of the COVID-19 response over the past two years and deserve to be fairly compensated for keeping us safe while facing risks to themselves and their families.

It further provides findings (a) concerning healthcare workforce shortages and retention issues, (b) the profits made by hospital systems during the pandemic despite difficult working conditions and burnout within healthcare workers, and (c) healthcare workers' cost of living challenges, including income inequality and housing uncertainty. Dkt. 1-1, at § 187.50. The Ordinance concluded the solution to these problems is to raise the minimum wage. *Id.* "Adequate compensation will help address the burnout, retention challenges, and worker shortages affecting healthcare workers in Los Angeles." *Id.*

## B. Pursuant to City Law, the Ordinance Was Certified as an Initiative Petition for Presentation to the Los Angeles City Council

The procedural history of the Ordinance is significant. Contrary to the haphazard "slapdash" implementation Plaintiffs misleadingly portray, the Ordinance was adopted following the processes and procedures mandated by the City's Charter and Elections Law, which were designed to ensure the People's power to enact and reject laws are timely considered and acted upon.

A proposed Ordinance may be submitted to the Los Angeles City Council by a petition filed with the City Clerk, requesting the ordinance be adopted or submitted to a vote. Request for Judicial Notice ("RJN"), Ex. 7 (L.A. City Charter, § 450)[1]. In doing so, the Charter mandates various procedures and time requirements that must be met. L.A. City Charter, § 451. These include (a) the proponents of the petition must submit a draft to the City Clerk, setting forth the proposed ordinance; (b) to qualify for presentation to the Council, within 120 days, the petition must be signed by at least 15%

---

[1] The relevant sections of the L.A. City Charter are collectively attached as Exhibit 7 to Defendants' RJN.

4

of the number of registered voters who voted for the Mayor in the last general, or if relevant, primary election, a process that must be examined and certified by the City Clerk; and (c) if sufficient, the City Clerk must present the petition to Council without delay. *Id.*

On February 16, 2022, five Angelenos whom the City understands are affiliated with the Service Employees International Union-United Healthcare Workers West (SEIU-UHW) submitted the proposed initiative petition for approval by the Los Angeles City Council to begin a signature campaign in support of the proposed Ordinance. Declaration of Bernie Mariscal ("Mariscal Dec."), ¶ 2, Ex. 1.  The initiative petition was approved for format and wording which triggered the 120-day period to obtain 64,785 valid signatures of registered voters of the City of Los Angeles.  Mariscal Dec., ¶ 2, Ex. 1; *see also* L.A. City Charter, § 451(b).

On May 27, 2022, the City confirmed it received 145,574 signatures in support of the proposed initiative.  Mariscal Dec., ¶ 4, Ex. 3.  This triggered an audit of the signatures, which, per Los Angeles Election Code, § 711(b),[2] required drawing a 5% random sample, 7,279 signatures; if the City Clerk deemed more than 3,361 of those signatures valid, then the City Clerk would certify the petition.  *See* Mariscal Dec., ¶ 4, Ex. 3.  Los Angeles Election Code, § 711(b) further mandated the City Clerk had 15 days from the final acceptance of the signatures to conduct the audit.  The City Clerk's determination could have been challenged in court but was not.  L.A. Elec. Code, § 711(g).

The City Clerk certified the initiative on June 9, 2022.  RJN, Ex. 9. Under the Charter, City Council had 20 days to take one of three steps: (1) adopt the proposed ordinance, without alteration; (2) call a special election to be held within 110 to 140 days to vote on the proposed ordinance; or (3) submit the proposed ordinance, without

---

[2] The relevant sections from the Los Angeles Elections Code are collectively attached as Exhibit 8 to the RJN.

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

alteration, to a vote of the City's electors in the next regularly-scheduled election to be held at least 110 days after Council action on the petition.  L.A. City Charter, § 452(b); *see also* Los Angeles Election Code, §§ 705-711 (Initiative Petitions).

### C.    Following Public Comment, City Council Adopts the Ordinance

The City Council received comments on the proposed ordinance on multiple occasions.  Written public comment included statements from opponents to the proposed ordinance, such as Plaintiffs and its members, the Hospital Association of Southern California, Cedars-Sinai Health System, Barlow Respiratory Hospital, Kaiser Permanente, and a number of healthcare workers in support of the proposed ordinance. RJN, Ex. 12.

On June 21, 2022, the City Council held a hearing to consider the proposed ordinance; the hearing was attended in force by workers in support of the ordinance:



6

RJN, ¶ 9 (June 21, 2022 Regular City Council Meeting at 2:19:36).  Three

Councilmembers spoke at the hearing:

- Councilmember Price noted the importance of healthcare workers, how the increased minimum wage will help with the healthcare industry's turnover problem and attract new workers, and he commented that, if Target can afford to pay a $25 minimum wage, so can the healthcare industry;

- Councilmember Koretz expressed a concern that the healthcare industry cannot keep up with its need for workers and that healthcare workers can go work at Target or McDonalds for similar wages, but without the health risk inherent in working in healthcare during a pandemic;

- Councilmember Bonin commented that healthcare industry CEOs and executives have been paid enormous salaries and received substantial bonuses recently, and hospitals have made huge profits, while their workers struggle.  Mr. Bonin also noted that workers at Cedars-Sinai told him they could work at Starbucks for more money.

RJN, ¶ 9 (June 21, 2022 Regular City Council Meeting at 2:19:36).  The City Council

then voted to hold the proposed ordinance over for one week to June 28, 2022 for a

second reading.  RJN, Ex. 10.

On June 28, 2022, the City Council heard public comment from a number of

people employed at healthcare facilities discussing the need for the increased minimum

wage:

- A worker is expecting a baby and already cannot afford to pay utility bills;

- A $19 per hour salary is inadequate to support a worker's daughter;

- Since the onset of the pandemic, workers have been short-staffed on the front lines, and are still struggling to make ends meet;

- A veteran of the wars in Iraq and Afghanistan is concerned about becoming homeless; he has had to take out loans to make ends meet and is already defaulting;

- Workers live in their cars and have gym memberships so they have a place to bathe;

- Workers cannot afford to pay for the gas necessary to get to work; workers are calling out sick because they cannot afford to drive to work; workers' children who work at Target make a higher wage;

- Due to short staffing, workers do not have enough time to clean the hospital rooms in time; then they go home and have to confront their financial struggles.

7

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

RJN, ¶ 10 (June 28, 2022 Regular City Council Meeting at 1:00:30-1:05:02; 1:05:55-1:06:52; 1:07:54-1:09:39; 1:15:43-1:19:22; 1:20:48-1:23:27).  Following the public comment received from both proponents and opponents of the proposed ordinance, and on its last day to act, June 29, 2022, City Council adopted the proposed ordinance.  RJN, Ex. 11.

The Mayor approved the Ordinance on July 7, 2022.  RJN, Ex. 11; *see also* L.A. City Charter, § 250 (procedure for adoption of ordinances).  The Ordinance was then published on July 12, 2022; the Ordinance takes effect 31 days later, August 13, 2022.  L.A. City Charter, § 252.  Under the language of the Ordinance, which City Council could not alter, this effective date could not be delayed.  Dkt. 1-1, p. 9, § 4.

**D.    Attorneys for Plaintiffs Filed a Referendary Petition to the Ordinance on the Same Day it was Passed by City Council, Which if Certified Sufficient, Would Stay the Ordinance**

Following adoption of an ordinance, a referendary petition may be submitted to prevent the ordinance from taking effect.  L.A. City Charter, §§ 460-461.  Any Ordinance adopted by Council shall be subject to a referendary vote.  L.A. City Charter, § 452(c).  Under this procedure, supporters of the referendary petition have 30 days to submit signatures in support of the referendary petition.  L.A. City Charter, § 461.  If the City Clerk certifies the signatures are sufficient, the subject ordinance will not take effect, and the City Council can either repeal the ordinance or have the ordinance voted on at an election.  L.A. City Charter, §§ 461(c), 462; *see also* Los Angeles Election Code, §§ 712-717.

On June 29, 2022—the same day the Ordinance was passed by City Council—a referendary petition was filed with the City Clerk by individuals represented by Bell McAndrews and Hiltachk LLP, attorneys for some of the Plaintiffs.  Mariscal Dec., ¶ 5, Ex. 4.  On July 14, 2022, Bell, McAndrews and Hiltachk LLP was advised the referendary petition met the requirements of City law, and the 30-day period to circulate

8

1    the petition and collect the necessary valid signatures of registered voters ends on August

2    12, 2022.  Mariscal Dec., ¶ 6, Ex. 5.  Thus, if the City Clerk certifies the referendary

3    petition is sufficient, by operation of law, the Ordinance will not take effect until

4    adoption by a vote of the electors.  L.A. City Charter, § 461(c).

5           **E.     The Present Litigation**

6           On July 14, 2022, Plaintiffs filed their Complaint against the City and Mayor

7    Garcetti seeking Injunctive and Declaratory Relief under four counts, (1) violation of the

8    United States Constitution's Equal Protection Clause, (2) violation of the California

9    Constitution's Equal Protection Clause, (3) violation of the United States Constitution's

10   Due Process Clause, (4) Violation of the California Constitution's Due Process Clause.

11   Dkt. 1.  The next day, Plaintiffs moved for a preliminary injunction and filed an

12   emergency *ex parte* application to expedite the hearing on the motion to August 5.  Dkt.

13   17 and 18.  The parties ultimately agreed to a briefing schedule on the motion, which the

14   court modified.  Dkt. 19 and 25.

15   **III.   LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS**

16          A preliminary injunction issued prior to a trial on the merits and final judgment is

17   "an extraordinary remedy that may only be awarded upon a clear showing that the

18   plaintiff is entitled to such relief" and is "never awarded as of right."  *Winter v. Natural*

19   *Resources Defense Council, Inc.*, 555 U.S. 7, 22-23 (2008); *see also Mazurek v.*

20   *Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary

21   injunction is an extraordinary and drastic remedy, one that should not be granted unless

22   the movant, by a clear showing, carries the burden of persuasion.").  To obtain

23   preliminary injunctive relief, Plaintiffs, as the moving parties, must make a "clear

24   showing" that (1) they are likely to succeed on the merits; (2) they are likely to suffer

25   irreparable harm in the absence of the preliminary relief; (3) the balance of equities tip in

26   their favor; and (4) an injunction is in the public interest.  *Am. Trucking Ass'ns v. City of*

27   *L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20); *see also* Fed.

28

R. Civ. P. 65 (governing the issuance of preliminary injunctions).  The first element, "likely to succeed," is the most important and can be decided before considering the others.  *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015).

## IV.   ARGUMENT

### A.   Plaintiffs Are Not Likely To Succeed On The Merits

Plaintiffs are not entitled to the injunctive relief they seek because they are not likely to succeed on the merits of their claims for violation of the Equal Protection clauses under the federal and California Constitutions and for violation of procedural due process under the federal and California Constitutions.

#### 1.   Wage Regulation Is Within The City's Police Powers

It is indisputable that regulation of wages and conditions of employment are expressly within the police power of local government.  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1150 (9th Cir. 2004) ("The power to regulate wages and employment conditions lies clearly within a state's or a municipality's police power. 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety . . . are only a few examples. [Citation.]'").

#### 2.   Plaintiffs' Equal Protection Claims Fail

Plaintiffs' request for injunctive relief for violation of the federal and state Constitutions' Equal Protection clauses lacks merit.  In their First and Second Counts for Relief, Plaintiffs allege that the Ordinance violates the federal equal protection clause, U.S. Const., 14th Amend., and California's analogue, Cal. Const., art. I, § 3, subd. (b)(4). The Equal Protection analysis under the California Constitution is substantially similar to the analysis under the federal Equal Protection Clause (*RUI One*, 371 F.3d at 1154; *Manduley v. Super. Ct.*, 27 Cal. 4th 537, 571-72 (2002)), and both require similarly situated people to receive like treatment.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982);

10

*Cooley v. Sup. Ct.*, 29 Cal. 4th 228, 253 (2002).  But "[the] Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. [Citation.]"  *Plyler*, 457 U.S. at 216. "A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill."  *Id.*

### a)   Because Highly Deferential Rational Basis Review Applies, and City Council Found Rational Reasons For the Ordinance, Plaintiffs Fail to State an Equal Protection Violation Claim

Because the Ordinance does not involve a fundamental right or a suspect class, Plaintiffs concede—as they must—rational basis review applies.  Dkt. 17, at pp. 13-14; *see also FCC v. Beach Comms.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").  Stated differently, choices about the scope of economic regulations are fundamentally political choices, and courts review laws challenged as violating equal protection under the deferential "rational basis" test.  This test is the "most relaxed and tolerant form of judicial scrutiny" under the Equal Protection Clause. *Dallas v. Stanglin*, 490 U.S. 19, 26 (1989).

Because Legislatures have wide latitude to manage their economies, economic classifications are to be upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis" for them.  *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 965 (9th Cir. 2021) ("ASJA") (quoting *Beach Communications*, 508 U.S. at 313).  Significantly, "[w]here there are 'plausible reasons' for [legislative] action," the Court's inquiry is at an end.  *RUI One Corp.*, 371 F.3d at 1154 (alteration in original) (quoting *Beach Communications*, 508 U.S. at 313–14); *see also Autotronic Systems, Inc. v. Coeur d'Alene*, 527 F.2d 106, 108 (9th Cir. 1975).

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1    Indeed, Legislative classifications have a strong presumption of validity

2    (*Lyng* v. *Automobile Workers*, 485 U.S. 360, 370 (1988)), and those attacking the

3    rationality of a classification have to negative every conceivable basis which might

4    support it.  *RUI One*, 371 F.3d at 1155.

5        Based on the procedural and factual record, City Council's decision was not

6    irrational, and there is no merit to Plaintiffs' Equal Protection violation claims. Notably,

7    the Ordinance, which was put forward as an initiative contained the following purpose:

8        In the City of Los Angeles, healthcare workers are integral to our wellbeing.
         Healthcare workers have risked their own health to ensure all residents have access
9        to healthcare.  While healthcare providers have seen drastic increases in profits,
         even during the COVID-19 pandemic, workers are still under paid and struggle to
10       afford housing and other basic needs.  Our healthcare workers have been and
         continue to be the backbone of the COVID-19 response over the past two years
11       and deserve to be fairly compensated for keeping us safe while facing risks to
         themselves and their families.
12

13   Dkt. 1-1 (L.A.M.C. § 187.50).  Findings in the Ordinance further included healthcare

14   workers' significant workforce shortages and retention issues, the profits being made by

15   the healthcare industry, and the rising costs of living healthcare workers are struggling to

16   keep pace with.  *Id.*  City Council received written and public comment on the proposed

17   Ordinance on multiple occasions, including statements from opponents to the measure,

18   including Plaintiffs or their members, as well as from individual healthcare workers.

19   RJN, Ex. 12; s*ee also* Dkt. 17 at 5:6-8 ("After the City Clerk weighed in, the City

20   Council received letters from healthcare facilities and heard from individuals at a public

21   hearing.").  After taking everything into consideration, City Council elected to adopt the

22   proposed ordinance, without alteration, as authorized by Section 452(b)(1) of the Charter.

23       In doing so, City Council rationally decided to compensate the brave healthcare

24   workers who have routinely shown up and continue to work in the healthcare industry

25   throughout a two-plus year pandemic, risking their and their families' lives, often for less

26   compensation than they could make in a different and less-hazardous job.  The City's

27   determination that "[a]dequate compensation will help address the burnout, retention

28

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

challenges, and worker shortages affecting healthcare workers in Los Angeles" (Dkt. 1-1, L.A.M.C. § 187.50) is rationally related to the legislative purpose and does not violate the Equal Protection Clauses of the federal or state Constitutions.

Although persuasive only, various courts in the Central District denied injunctive relief based on similar minimum wage "hero pay" Ordinances enacted in response to the COVID-19 pandemic. *See Cal. Grocers Ass'n v. City of Long Beach*, 521 F.Supp.3d 902, 912-915 (C.D. Cal. 2021) (applying rational basis review to an Ordinance providing "hero pay" to grocery workers, and finding among other things, the plaintiffs failed to establish a likelihood of success on its Equal Protection violation claims); *S. Cal. Healthcare Sys. Inc. v. City of Culver City*, No. 2:21-cv-05052, 2021 U.S. Dist. LEXIS 141109, *16-20, 2021 WL 3160524 (C.D. Cal. July 23, 2021) (Plaintiffs failed to demonstrate a likelihood of success on its Equal Protection claims concerning an Ordinance requiring on-site hospital workers to receive increased hourly pay); *Western Growers Ass'n v. City of Coachella*, 548 F.Supp.3d 948, 960-63 (C.D. Cal. 2021) (Ordinance requiring agricultural and grocery workers to receive increased pay survived rational basis review, resulting in the grant of a motion to dismiss and denial of a motion for preliminary injunction). The same result is appropriate here.

### b) Plaintiffs' Arguments Regarding "Improperly Singling Out" Private Facilities Lack Merit

### There is no Constitutional Violation Based on the Definition of a Covered Healthcare Worker or Facility

The thrust of Plaintiffs' argument is the Ordinance is unconstitutional because it applies to some healthcare workers and facilities but not others. This argument is unpersuasive. Under rational basis review, Plaintiffs cannot substitute their views for that of City Council, and Plaintiffs have not met their heavy burden of "negat[ing] every conceivable basis which might have supported" the classifications in the Ordinance. *RUI One*, 371 F.3d at 1155. Indeed, City Council "may implement their program step by step

13

1    …, adopting regulations that only partially ameliorate a perceived evil and deferring

2    complete elimination of the evil to future regulations." *ASJA*, 15 F.4th at 965.  And even

3    if the City could have better addressed the minimum wage classification for healthcare

4    workers, or with greater precision, the Equal Protection Clause does not require it to do

5    so. *Id.*  "A legislature must have substantial latitude to establish classifications that

6    roughly approximate the nature of the problem perceived, that accommodate competing

7    concerns both public and private, and that account for limitations on the practical ability

8    of the State to remedy every ill." *Plyler*, 457 U.S. at 216.

9         The Ordinance does not violate the Equal Protection Clause because the definition

10   of a covered healthcare worker has some "reasonable basis." *Clements v. Fashing*, 457

11   U.S. 957, 962-63 (1982) ("The Equal Protection Clause allows the [City] considerable

12   leeway to enact legislation that may appear to affect similarly situated people

13   differently. Legislatures are ordinarily assumed to have acted constitutionally. Under

14   traditional equal protection principles, distinctions need only be drawn in such a manner

15   as to bear some rational relationship to a legitimate state end. Classifications are set aside

16   only if they are based solely on reasons totally unrelated to the pursuit of the State's goals

17   and only if no grounds can be conceived to justify them.").  Legislative decisions may be

18   based on rational speculation unsupported by evidence or empirical data. *RUI One*, 371

19   F.3d at 1155; *see also Vance v. Bradley*, 440 U.S. 93, 111-12 (1979) ("It makes no

20   difference that the facts may be disputed or their effect opposed by argument and opinion

21   of serious strength. It is not within the competency of the courts to arbitrate in such

22   contrariety.")

23        The Ordinance only applies to private facilities; the City cannot set rates for

24   federal, state and county workers.  Moreover, publicly funded facilities are ultimately

25   funded by taxpayers, and the City is not looking to increase taxes.  The Ordinance further

26   is designed to address healthcare workers at the most necessary and vulnerable facilities.

27   Indeed, Plaintiffs' example of the private plastic surgery clinic exemplifies this point;

28

14

---

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION<br>TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

arguably, the plastic surgery clinic affiliated with Children's Hospital provides a much more vital service to the community than a celebrity clinic.  Dkt. 17 at 1:24-28.

Moreover, the Ordinance's application to private rather than public entities is supported by available economic data which demonstrates public entity workers receive higher compensation than private entity workers.  For example, according to the California State Controller's Office, full-time Certified Medical Assistants at Los Angeles County + USC Medical Center were paid on average approximately $58,116.49 in 2021, which amounts to approximately $27.94 per hour.  RJN, ¶ 13.  In contrast, according to the Bureau of Statistics, the average wage for medical assistants in the Los Angeles Metropolitan Area in 2021 was $41,390, with an average hourly rate of $19.90.  RJN, ¶ 14.  Additionally, according to the California State Controller's Office, Custodians at Los Angeles County + USC Medical Center were paid an average wage in 2021 of approximately $24.10.  RJN, ¶ 13.

Plaintiffs' reliance on *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) is misplaced.  *Merrifield* "presented a unique set of facts."  *ASJA*, 15 F.4th at 965.  In *Merrifield*, the plaintiff challenged the selective exemption to California's pesticide licensing scheme to persons who captured or removed "vertebrate pests" without using pesticide; bats, raccoons, skunks, and squirrels were considered vertebrate pests, but mice, rats, and pigeons were not.  *Merrifield*, 547 F.3d at 981-82.  In defending the law against a due process challenge, the State offered reasoning that contradicted its proffered public health rationale for the scheme as a whole.  *Id.* at 991-92.  In striking down the selective exemption in *Merrifield* on equal protection grounds, the Ninth Circuit reasoned, "[w]e cannot simultaneously uphold the licensing requirement under due process based on one rationale and then uphold Merrifield's exclusion from the exemption based on a completely contradictory rationale."  *Id.* at 991.

In other words, "*Merrifield* stands for the unremarkable proposition that no rational basis exists if the law lacks *any* legitimate reason for its adoption."  *S.F. Taxi Coalition. v.*

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*City & Cty. of S.F.*, 979 F.3d 1220, 1225 (9th Cir. 2020).  The Ninth circuit noted Legislative decisions sometimes benefit some groups and burden others.  *Id*.  "In short, *Merrifield* provides an outer limit to the [Legislature's] authority if the [Legislature's] action borders on corruption, pure spite, or naked favoritism lacking any legitimate purpose."  *Id*.  As in *San Francisco Taxi Coalition*, there is no evidence this case comes close to that outer border.

### The Ordinance Addresses Rising Costs of Living, Staffing Shortages and Retention, and Increasing Profit Margins of Hospitals

Plaintiffs' additional argument the Ordinance will undermine its stated goals also lacks merit.  Notably, Plaintiffs do not address the rising costs of living facing the low wage but brave healthcare workers the City is expressly concerned about, and therefore concede the merit on this issue.

In terms of staffing shortages and retention issues, Plaintiffs argue on the one hand, that the increased minimum wage will result in non-covered workers looking to move to covered facilities (Dkt. 17 at 17:4-7), yet then contradict themselves and argue compensation is only one aspect of an employee's job.  *Id.*, at 16:27- 17:3.  "Compensation is one aspect of an employee's view of their job but non-wage incentives including vacation, part-time work, flexibility in working conditions, schedules, and telework are important to help retain workers, particularly given the effects of the COVID-19 pandemic on the employer-employee relationship."  *Id*.  This is precisely one of the legitimate reasons for the classification: public employers generally offer better benefits (i.e. non-wage incentives) to their employees than private employers.  Hence, Plaintiffs defeat their own argument.

Finally, although Plaintiffs bemoan the lack of increasing profits to hospitals and argue incessantly about what raising the minimum wage will do to the financial condition of covered facilities, it is important to put the facts into perspective.  As of July 1, 2022, the minimum wage in the City is $16.04.  L.A.M.C. § 187.02(d); Dkt. 17 at 1:21.  This

16

results in a full-time annual income, before taxes of $33,363.20.  In increasing the hourly minimum wage to $25, a full-time employee's (40 hours per week) annual salary would be $52,000 before taxes.  Contrast these compensation amounts with the publicly available salaries of the declarants:

- Amit Mohan ($365,541), President and CEO of Plaintiff Barlow Respiratory Hospital;

- James West ($1,576,298), President and CEO of Plaintiff PIH Health;

- Phil Wong ($289,531), CEO of Gateways Hospital and Mental Health Center.

Declaration of Joseph S. Persoff ("Persoff Dec."), Exs. 18-20.

The difference in annual compensation between the minimum wage healthcare workers and declarants is not only striking—it's astronomical—and it is precisely a rationale raised by Councilmember Bonin during the public hearings on the Ordinance. Accordingly, the Ordinance assists frontline workers by providing them a livable wage, as well as one that reflects their tireless, important service to the community at the front-line of the pandemic.  And as suggested by the exorbitant executive salaries noted above, Plaintiffs are capable of directing funds to pay healthcare workers a living wage but have instead demonstrated their personal profits take precedence.

### 3.  Plaintiffs' procedural due process violation claim fails

Plaintiffs are also not likely to succeed on their Third and Fourth Counts for a procedural due process violation.  The due process clauses of the federal and California Constitutions protect individuals against governmental deprivations of life, liberty or property without due process of law.  U.S. Const. amend. XIV, § 1; Cal. Const. art. I, § 7.

Procedural due process requires notice and the opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994).  It is a flexible concept, and precisely what procedures are required in a given case are a function of context.  *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018).  Procedural due process

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 259, (1978).

Both the United States Supreme Court and the California Supreme Court have identified the factors to look for in determining whether a procedural due process violation exists: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. at 335; *Conway v. State Bar*, 47 Cal. 3d 1107, 1113 (1989). The California Supreme Court also determined a fourth factor to consider, persons subject to deprivatory government action be treated with respect and dignity. *People* v. *Ramirez*, 25 Cal. 3d 260, 267-68 (1979). Notably, under both the federal and California Constitutions procedural due process may require only that the Legislature comply with the statutory limitations on its authority. *Id*. at 269; *Halverson*, 42 F.3d at 1260 ("[W]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.").

There is no merit to Plaintiffs' procedural due process violation claims. Plaintiffs were provided notice and an opportunity to be heard long before the Ordinance was adopted and knew for months the law could be enacted. The Ordinance began as an initiative petition filed with the City Clerk's office almost six months ago, on February 16, 2022. Mariscal Dec., Ex. 1. It was expressly indicated in the initiative petition that if City Council approved the measure, it was to take effect on the earliest date allowed by law (31 days), and City Council cannot make any alternations to a proposed ordinance presented through the initiative process. L.A. City Charter, §§ 252, 452(b)(1).

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Thereafter, signatures in support of the petition were obtained, presented and accepted in May 2022.  The City Clerk presented the initiative petition to City Council on June 10, 2022, and prior to its adoption, City Council held multiple public hearings where it received public comment both in support and against of the Ordinance.  RJN, ¶¶ 4, 9, 10.  Notably, Plaintiffs or their members presented their Opposition to it, or minimally, had the opportunity to do so.  Dkt. 17 at 5:6-8; *see also* RJN, Ex. 12.  In fact, a referendary petition was filed by one of the law firms representing Plaintiffs on June 29, 2022—the same day the Ordinance was adopted by City Council.  Mariscal Dec., ¶ 5, Ex. 4. Clearly, Plaintiffs knew the law was impending, or had a risk of being adopted, for months and had time to plan for its inception.

Furthermore, in adopting the Ordinance, City Council followed the procedures mandated in the Charter and the Los Angeles Elections Code.  It is these same laws the opponents to the Ordinance (represented by Plaintiffs' counsel) are utilizing for their own benefit with the referendary petition.

Plaintiffs further cannot demonstrate a procedural due process violation concerning the one-year waiver provision from the minimum wage requirements.  This provision is designed to provide the precise relief Plaintiffs are seeking—to obtain a waiver from complying with the minimum wage law for legitimate reasons.  It is not in the City's, or anyone's, interest for a covered healthcare facility or physician's group to close.  The waiver is intended to afford covered facilities and providers with the flexibility needed to show hardship, and there are a variety of ways this can be addressed in the judicial system.  Among other things, to the extent a covered facility needs time to gather its documentation, the facility can seek appropriate relief including a stay to do so.  Plaintiffs have not presented any evidence they have attempted to seek a waiver, and therefore do not have standing to present the argument (*see e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); it is also unripe.  *See Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018).  Furthermore, there is no requirement that a minimum wage law

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

include a hardship exemption and the City is unaware of any such exemptions in other minimum wage laws.  Moreover, Plaintiffs' arguments that they do not have adequate time or resources to gather the necessary financial documents rings hollow because Plaintiffs are mandated under California law to file quarterly and annual financial reports with the State.  *See* Cal. Health & Saf. Code, §§ 127285, 128700, 128735 and 128740.[3]

## B.   The Remaining *Winter* Factors Do Not Support Injunctive Relief

Given Plaintiffs' failure to carry their heavy burden to show they are likely to succeed on the merits, the Court need not analyze the remaining *Winter* factors.  *Garcia*, 786 F. 3d at 740 ("The first factor under *Winter* is the most important – likely success on the merits. [Citations] Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements].'").  However, should the Court engage in an analysis of the remaining factors, they do not support injunctive relief.

### 1.   Plaintiffs Fail To Demonstrate Irreparable Harm

Plaintiffs fail to establish they would suffer irreparable harm absent the issuance of a preliminary injunction because Plaintiffs have failed to support their conclusory assertions with adequate evidence, rendering their claims of irreparable harm entirely speculative.  To establish irreparable injury, Plaintiffs must show that irreparable injury is

---

[3] Plaintiffs also criticize the waiver provision by claiming that a court will be unable to rule on the waiver in time.  Dkt. 17, p. 17.  The basis for this assertion is an article cited by Dr. Miller in his declaration regarding court backlogs from six months ago.  That article is outdated, and Dr. Miller has no foundation to opine on the case load of the Los Angeles Superior Court.  Regardless, courts commonly rule on matters on an expedited basis, and Plaintiffs do not explain why they would be unable to obtain such expedited relief here.  *See, e.g.*, Cal. Code Civ. Proc., § 1103 ("A writ of prohibition may be issued by any court to an inferior tribunal or to a corporation, board, or person, in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law.").  Plaintiffs criticize the Ordinance as not providing a specific court procedure for obtaining the waiver, but that silence is a lack of restriction: healthcare facilities are able to utilize any court procedure generally available to obtain relief.

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

likely, not merely possible. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Further, "economic harm is not generally considered irreparable." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020).

The primary reason Plaintiffs cannot demonstrate a likelihood of irreparable harm is Plaintiffs' Motion may be moot simply due to the democratic process playing out, as set forth in the Charter. Plaintiffs have begun the process for collecting signatures in support of a referendary petition. Mariscal Dec., ¶ 5, Ex. 4. If there is enough public support for Plaintiffs' position, the Ordinance will not take effect and instead will be voted on at election, rendering Plaintiffs' request for injunctive relief entirely moot. L.A. City Charter, § 461(c). Notwithstanding this reason, which is fatal to Plaintiffs' Motion, Plaintiffs raise three arguments, all of which fail.

First, Plaintiffs argue that a constitutional violation alone can suffice to show irreparable harm. Dkt. 17 at p. 32. Plaintiffs' argument fails because there is no constitutional violation here and, even if there were, any alleged violation can be adequately remedied through damages. Cases that have found a constitutional violation alone is sufficient to demonstrate irreparable harm involve different types of alleged violations, such as violations of the First Amendment, a prisoner's Eighth Amendment right to adequate medical care, or the right to vote. *Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief."); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) (prisoner's "constitutional right to adequate medical care is sufficient to establish irreparable harm"); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote therefore constitutes irreparable injury.").

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Second, Plaintiffs argue that complying with the statute may lead to Plaintiff Barlow Respiratory Hospital ("Barlow") closing at least some of its facilities and other facilities being forced to reduce services. Dkt. 17, pp. 32-33. Plaintiffs assert this conclusion, but they fail to put forth admissible evidence demonstrating that such a result is anything but speculative. For example, Plaintiffs characterize the impact on their operations as an increase from $16 per hour to $25 per hour ("an unprecedented 55% minimum wage increase"), but they put forth no evidence as to what their average hourly rate of pay for covered workers actually is. Therefore, due to market conditions, the average hourly rate of pay for covered workers may already be $20, $23, or $24.50 per hour, and the financial impact of the minimum wage increase may be limited.

Specifically as to Barlow, Plaintiffs contend it has 380 employees, but they do not say how many of those employees are employed within the City of Los Angeles and how many of those employees they currently pay less than $25 per hour.[4] Dkt. 17-1, ¶ 4. Barlow also contends "[e]ven before the Ordinance, labor costs accounted for 66% of hospital expenditures," but Barlow does not provide a time period this statistic applies to, and it does not explain what percentage of those labor costs are due to employees they pay less than $25 per hour. Dkt. 17-1, ¶ 7. Further, this statistic is contrary to Barlow's State-mandated financial disclosures. As mandated by Cal. Health & Saf. Code § 128735, Barlow submitted records of its financial performance to the California Department of Health for the period of September 1, 2020 through August 31, 2021.

---

[4] Barlow is required to maintain such records and, due to its defense of two currently pending wage and hour putative class actions, Barlow has likely recently prepared such data. *See, e.g.*, Cal. Lab. Code, § 226 (wage statements must contain hours worked and rate of pay, and employer must provide these records following employee request); *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58, 76 (2021) ("[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee."). In one of the two pending lawsuits, Barlow attended mediation on June 22, 2022, which almost certainly required Barlow to prepare records demonstrating the average rate of pay of its hourly employees. RJN, Exs. 15-17.

DEFENDANTS CITY OF LOS ANGELES AND ERIC GARCETTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

These records Barlow prepared reflect that it paid $27,163,958 in salaries and wages with total operating expenses of $63,736,219, reflecting that employee wages account for 42.6% of expenses, substantially lower than Mr. Mohan states.  RJN, Exs. 13-14.  What's more, that 42.6% figure includes executive salary, such as Mr. Mohan's $365,541 salary, as reported on Barlow's 2019 IRS filing.[5]  Persoff Dec., Ex. 18.  Removing these substantial executive salaries lowers that figure even further.

Further suggesting that the financial impact on covered medical facilities will not be as significant as Plaintiffs conclude is the statistic Dr. Miller provides that approximately 35% of healthcare workers who work at a covered facility make less than $25 per hour.  Dkt. 17, p. 24; Dkt. 17-7, ¶ 9.  Therefore, the minimum wage will only increase for a minority of the workforce, as the majority of workers are paid over $25 per hour.  But Dr. Miller does not explain how he calculated this figure, other than to cite to data from the California Health & Human Services Agency which has figures for over 400 healthcare facilities throughout California.  If this 35% figure is based on healthcare facilities throughout California, then the percentage of healthcare workers whose wages will increase from the Ordinance is likely even lower, and the financial impact of the Ordinance on healthcare facilities in Los Angeles even lower, as workers in Los Angeles are likely paid more than workers in other parts of the state, such as Bakersfield or Fresno.

---

[5] Other executive salaries Barlow reported for that year include $252,432 for the Medical Director who worked 24 hours per week, $155,704 for the CFO who worked 24 hours per week, $196,178 for the CNO, $225,829 for the VP, Business Development, $206,515 for a Case Manager, Admitting, $175,047 for a Nursing Supervisor, $165,978 for an Asst. CNO, $165,235 for a Nursing Supervisor, and $161,906 for a Case Manager, Admitting.  Persoff Dec., Ex. 18, pp. 7-8.  Plaintiffs' Motion focuses on a purported inability to raise revenues to pay for the wage increases, but they do not address the option of reducing executive salaries to pay for the wage increases.  Notably, Councilmember Bonin stated the Ordinance furthered the egalitarian goal of reducing the pay disparity between executives and hourly workers.  RJN, ¶ 9 (June 21, 2022 Regular City Council Meeting at 2:19:36).

23

Therefore, Plaintiffs' contentions that complying with the Ordinance would cause them irreparable harm due to negative impact to their business operations are naked conclusions without any supporting evidence. Such speculation is inadequate to demonstrate irreparable harm. Regardless, even if Barlow or another healthcare facility would suffer unintended economic consequences as a result of complying with the Ordinance, that facility could take advantage of the waiver provision, providing yet another reason why Plaintiffs will not suffer irreparable harm.

Third, Plaintiffs argue that, if they comply with the Ordinance and it is ultimately invalidated, they will be unable to reduce employee pay to pre-Ordinance levels. Dkt. 17, p. 33. This assertion is entirely speculative, however. Plaintiffs cite no law preventing them from lowering wages if it is determined they are not required to comply with the Ordinance, and there is none. Additionally, Plaintiffs do not explain how paying employees higher wages alone causes irreparable harm.

For all these reasons, Plaintiffs have failed to demonstrate that they would suffer irreparable harm absent issuance of a preliminary injunction.

### 2. The Balance Of Equities And Public Interest Favors Paying Healthcare Workers An Increased Wage

Plaintiffs fail to show that the balance of equities and public interest weighs in favor of prohibiting the $25 minimum wage increase from taking effect. Plaintiffs' argument primarily depends on there being an underlying constitutional violation, but because they have not established a likelihood of success, this argument fails. Dkt. 17, pp. 33-34. Plaintiffs also argue the City would not suffer irreparable harm due to a delay of enforcement of the Ordinance. Dkt. 17, p. 34. Plaintiffs entirely disregard the interest of the workers who desperately need this wage increase. As demonstrated by the public comment at the City Council hearings, these workers are becoming homeless *now*, they are unable to pay their utility bills *now*, they are defaulting on loans they took out to pay bills *now*, and they are unable to pay for gas to drive to work *now*. RJN, ¶ 9 (June 21,

24

2022 Regular City Council Meeting at 2:19:36); RJN, ¶ 10 (June 28, 2022 Regular City Council Meeting at 1:00:30-1:05:02; 1:05:55-1:06:52; 1:07:54-1:09:39; 1:15:43-1:19:22; 1:20:48-1:23:27).  Clearly, if the healthcare employees cannot work because they cannot afford to get there, that disrupts hospital operations and harms patient care.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (public benefit from challenged government action weighed against issuance of preliminary injunction).  As a result of the Ordinance, Barlow's CEO Mr. Mohan may have to cut his $365,541 salary, but he is not going to have to live in his car.

## V.  **CONCLUSION**

For the foregoing reasons, and for any reasons that arise at or before the hearing on this matter, Plaintiffs' motion for preliminary injunctive relief should be denied.

DATED:  July 25, 2022

MICHAEL N. FEUER, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
ARLENE N. HOANG, Deputy City Attorney
JOSEPH S. PERSOFF, Deputy City Attorney

By:  /s/ Joseph S. Persoff
**Joseph S. Persoff, Deputy City Attorney**
Counsel for Defendants City of Los Angeles (also erroneously sued as the Office of Wage Standards for the City of Los Angeles) and Eric Garcetti

25